Good morning, Your Honors. May it please the Court, Kathleen Zellner on behalf of the appellant Ray Spencer and also the Krause appellee. So this case has a long history and I want to focus on the fact that a JMOL was denied after the verdict. We had a 17-day trial, two days of deliberation, many opinions prior to the trial denying the summary judgment. So the trial court determined after the verdict and after briefing after the trial that the Devereux standard that had been set on the continuing investigation prong of Devereux when the investigator is held to a standard of knowing or should have known that the suspect was innocent was almost an impossible standard to meet and that the court, the district court, said unless we have direct evidence that someone's innocent and that would be difficult to have in a child abuse case, then it's difficult for this court to imagine, the district court, there could be ever be sufficient evidence to show that the investigator knew or should have known that the person was innocent. So in Kostanich we said Devereux was circumstantial, was it for circumstantial cases and here was there direct evidence of  Yes, there was. I was a trial attorney. I ended up reading 320 quotes to the jury that I contended were fabricated and that the witnesses testified were fabricated. So doesn't that take us out of the Devereux context? Yes, and I think Devereux was a 2000-2001 case. I believe that Kostanich advanced the analysis to a much more tenable conclusion that you could have constructive knowledge from the fabrication itself. So if an investigator is fabricating, in this case, hundreds of quotations, hundreds of quotations, that from that you can deduce that you have a constitutional violation without anything else. So is your position, I think this is correct reading of Kostanich, but I want to make sure, if someone fabricates evidence against a defendant, even believing that they're guilty, that's a constitutional violation? Yes. You may have problems down, farther down the road on causation of damages, but at least the constitutional violation is the fabrication of evidence. You don't have, as long as you knowingly fabricate the evidence, you don't need any more mens rea than that. I agree with the Court that that is the only position that's consistent with the Constitution, with due process. You cannot be saying, oh, you can fabricate if you think the person's guilty, you know, because the time, the accrual time is when the fabrication takes place. It's not at some retrospective point later. But that's the key point. The key point is, at this point, according to the trial judge, there's a standard that's impossible to meet. So you have carte blanche to fabricate. It seems to me that even under the Court's standard, the Court may have been incorrect, because once you have the testimony of the alleged victims, that they were not, in fact, victims, and that they told the investigator that at the time, then that supports the finding under the jury instructions that were given, that the investigator was correct. The investigator should have known, at least. Right. So you may be right, theoretically, but I'm not sure that it matters to the outcome. It may not, Your Honor, because I do think that our evidence was sufficient to establish under the Devereux standard that the defendant, Krauss, knew that, or should have known that Mr. Spencer was innocent. This case was fabricated from the very beginning, out of whole cloth. There was absolutely nothing. And then, in addition to that, this defendant concealed the exculpatory medical records of two of the three children. The third child never had an exam done. Two of the three children, those medical records were concealed. The videotape of Katie Spencer, the defendant, Krauss, took home and had in her garage for 20 years while Mr. Spencer languished in prison. Let's assume you have ample evidence to go to the jury of fabrication and wrongdoing. And speaking only for myself, I think you do. The case is a little strange because your client pleaded, did an Alford plea, but pleaded. Normally, we look at a trial and say, oh, my God, had the jury known this stuff. What do we do with that here? Well, you have an Alford plea, so you don't have to. He didn't admit anything, I understand. No, exactly. But that's important. So you don't have him admitting anything, but you do have him testifying to the fact that he entered the Alford plea because he was presented with the fabricated police reports. And he believed that he had absolutely no chance to prevail at trial, plus he was broke. Is it possible in a case like this to move the causation meter back slightly in time? In other words, there seems to be ample evidence here that two prosecutors, when presented with all of this evidence, said not enough. The third prosecutor said yes. Had that prosecutor known that much of the evidence was fabricated, isn't there a good argument that he never would have been charged in the first place? Exactly, because if the prosecutor who actually went ahead and filed the charges had no hands-on involvement in the case, so he didn't interview any witnesses. It's not like a McSherry prosecutor. He didn't interview anyone. He didn't have the videotape because it had been removed and put in the defendant's garage. And so he was strictly relying on these fabricated reports. One of the really fascinating things about the case is we presented exhibits to the jury showing them the quotations that each child remarkably had used the same language, identical quotations. So the 4-year-old had used the same language as the 5-year-old. The 4- and 5-year-old had used the same language as the 9-year-old. And so I think it became apparent to the jury from the very beginning that there was deliberate fabrication in the case. Let me ask you a precise factual question. Is there evidence that, and I know we have big Matthew and little Matthew, but it's Matthew Hansen. Is there any evidence that his statement was fabricated? Yes. What's the evidence on that? Okay, here's the evidence of that. It's because Matt Hansen said he had witnessed the sexual abuse of Katie and Matt Spencer. Each of whom denied that it took place? Each of whom had denied. And so even the trial judge at the summary judgment stage said that that was really the key point with Matt Hansen, that there was still evidence that his reports were fabricated in addition to all the special deals that had been offered to him with his criminal infractions and all of that, which I think I was able to impeach him in front of the jury. But that's the key to the fabrication in his report. He's witnessing their abuse. And then, of course, his medical report, which is concealed, shows no abuse of him. Could you also address the district court's alternative ruling that there was an error in the jury instructions and that the moving force instruction didn't capture the Section 1983 tort causation principles? Yes, because the trial court was very involved in the jury instructions, drafting them. And so we all agreed that the moving force instruction was the causation instruction for this cause of action. And then it was only subsequently that the defendants in a reply brief started raising issues. Well, maybe we should have but for. But all of those arguments are waived. All of those arguments on but for were made about having probable cause for the false arrest, malicious prosecution, false imprisonment, which I dismissed so I could just take the case to the jury on deliberate fabrication. But going back to the moving force, that is the causation instruction. It applies to individual defendants. I thought that was for Monell. When I looked at the model jury instructions, that was for Monell claims, and then also that's from language in one of the Monell. Monell are one of those decisions. So does that capture for individuals both actual cause and proximate cause? No, because it's been the moving force has been applied to individual defendants. It was in Johnson v. Duffy, Kahn v. City of Reno, and I think Harper v. City of L.A. The court is correct that the typical case where you see moving force appears to be a Monell claim. But as Judge Settle said, and it's in footnote 6 of his May opinion, you know, if that wasn't the instruction he should have been using, the comments are very misleading about it. Is it more? We could rank causation. Obviously, but for is the least amount of causation you require because the next level up is proximate cause. Yes. And there was a proximate cause instruction in this case. There was. Where does moving force fall on that scale? Is it more than proximate cause or less than proximate cause? It's more because it's the moving cause. Okay. So if it is more, whether or not it was correct or not, it posed a higher burden. If it was incorrect, then there should have only been a proximate cause instruction, right? I'm sorry. If there is no requirement of proving moving cause in a case involving an individual, then the court should have only given a proximate cause instruction, right? That would be true, I think, if it had only been applied to Monell, but it's been applied. But I'm asking, let's assume that it only applies to Monell. My point, I think, is that that couldn't have harmed the defendant. No. Because it imposed a higher burden on you than if it weren't given, the appropriate instruction would have simply been a proximate cause instruction, right? Yes. So why is that? Could you explain that? I mean, we've got these two words, moving force. Opposing counsel argues that that's more akin to substantial factor. It really isn't. And why isn't it? I mean, substantial factor says it's one factor in the cause. Moving force is one force in the cause. It's the moving force. It's the use of the word the. It's the moving force. Because, and I have to correct myself, counsel submitted a proximate cause instruction. We did not. We simply had the moving force instruction. Proximate cause instruction was given. Yes. So going back to that, in the proximate cause instruction that the defendant submitted, they, of course, put into the instruction that there could be more than one proximate cause. Okay? So in our moving force instruction, it was simply this is the moving force. Well, counsel, I guess I have the same question that Judge Hurwitz asks, and that is, if there was error, I don't see what effect it could have possibly had, because the argument of the defendants was essentially, as I recall it, there were intervening causes such as the Alford plea, which was referred to in an earlier question. And that argument was made already. I mean, under the existing instructions, that argument was available and it was made because it goes to either proximate cause or moving force. So I guess I don't understand what difference it makes. I don't think that it does. And what's fascinating about the closing argument of defense counsel is he uses moving force synonymously with intervening cause. So what he tells the jury is the real moving force of this was, you know, the prosecutor's decision to prosecute. The real moving force of this was the Alford plea. The real moving force. So he used it synonymously with intervening cause. So I don't see that it makes a difference. I do think what's important to that. Basically, the argument was it was too attenuated from the alleged fabrication. Yes, exactly. The fabrication was just so clear and overwhelming. And I think the jury, I mean, this was a 17-day trial. This is what we were doing. They were presenting intervening causes. We were arguing the fabrication caused him to enter the Alford plea. The jury decided credibility. It heard all of these people, both of the defendants. It heard all of them testify. And it concluded in our favor there had been a deliberate fabrication and that the defendants had been indifferent to the violation and that Mr. Spencer, who spent almost 20 years incarcerated on this case, the longest in Washington history. But could you, so if we were to agree with you on moving force and we have to write an opinion, in this context, moving force means what would we say? You would say that moving force encompasses cause and fact and proximate cause. It's legal cause and it's factual cause. And it was the model. You know that. I mean, moving force doesn't really mean much of anything. So how does that, what does that mean? If you're right, then we ought never give a moving force instruction. We ought only give a proximate cause instruction. Now, again, I go back to my point that I think it didn't prejudice the other side in this case. But if you say that moving force is just a combination of but, for, and proximate, then why give it at all? It was just sort of plucked out of a Supreme Court opinion, right? So I'm just trying to translate that into actual legal English. Well, I think you have to look at the instruction that was given. Because it wasn't just thrown out, this is the moving force. If you look at instruction 21, it says that the jury, that the criminal charges, now this is on the moving force, filed against plaintiff were based on that evidence. Plaintiff suffered injury as a result of this evidence. The evidence was so closely related to the deprivation of plaintiff's rights as to be the moving force that caused the ultimate injury. And because defense counsel argued their whole defense was their intervening causes, I don't see, I don't see the objection to the moving force. I just don't see that it makes any difference. It's harmless error if you should have called it proximate cause. But I think it's actually stronger because I think that, you know, but for somebody becoming a police officer, you know, things may not have happened. This is, I think, a higher and stronger standard. But regardless, what difference does it make at this point? The jury heard, you know, all of counsel's arguments about intervening causation. We covered that. We had such detailed instructions. And then on top of it, our verdict form, the jury had to, in the verdict form, answer I think it was seven questions. And they had to go through whether or not there was deliberate fabrication, the Devereux standard. Then they had to continue on the supervisory liability. And then was the violation of plaintiff's constitutional rights to due in the damage. So this was such a carefully managed case. Based on trials I've done all over the country, this was very carefully managed. The judge, I think, at the end of the day was concerned about, I think he misinterpreted Castanets. He thought it only applied going forward. And it was just a mistake.   I'm sorry. Did you want to reserve your battle time? Yes, I should stop talking. Yes, I could reserve. I think I have 227 left. So thank you. You do. May it please the Court, I'm Jeff Freiman. I'm representing Defendant Michael Davis. Could you speak a little louder or raise the . . . Sure. May I have you raise the podium up a little? May it please the Court, I'm Jeff Freiman. I'm representing Defendant Michael Davidson. I'd like to reserve five minutes for . . . No, you have . . . both of you . . . for your co-person? Yes. Okay. Yes. Got it. I thought you were going to ask for a rebuttal or something. But my mistake. I misspoke. Yeah, I misspoke. Judge Settle wrestled with the parameters of Devereux liability for over a year. Through dozens of motions in this case, through fifteen day jury trial, and in the final analysis, he concluded that there was insufficient evidence for a reasonable jury to conclude that police detectives in 1984 would have known or should have known that Mr. Spencer was innocent. Right. And understand he wrestled with that and we're wrestling with it too. The question is whether or not it matters whether they knew or should have known that Mr. . . . the plaintiff in this case was innocent. I think . . . Is it your position that as long as the defendant is guilty, the police are . . . do not violate the Constitution by fabricating evidence? Our position is that the en banc court in Devereux stated that there . . . Now, just . . . I know . . . I can read what courts state. I want to know what your position is. Is it your position that there is no violation of the Constitution if evidence is fabricated as long as the defendant is either guilty or the police believe he's guilty? That's not only my position, Your Honor, but that was also the position of the en banc court in Devereux. So you think that, let's say it's a bank robbery and you are pretty sure that X is guilty, but you . . . either because you're lazy or you can't find the evidence, you make up eyewitnesses who don't exist and you plant evidence and that's okay because you know that he's actually guilty? It's not okay. The issue . . . Is it a violation of due process for the police to do that, yes or no? No. It would not be a violation of due process under the court's ruling in Devereux. Is that consistent with Kostanich, what you're saying now? It's consistent with part of Kostanich. When the Kostanich court was analyzing the liability of the supervisors, it did apply the issue of whether they knew or should have known that the foster parent was engaging in misconduct. It wasn't a criminal case. There may be different issues with regard to supervisory liability because in my scenario it's possible that the supervisor wouldn't even have reason to know that the material has been fabricated, but that wasn't really the question. It was the question of fabrication itself and it's your position that it does not violate due process to make up fake evidence if you think that a defendant is guilty. Again, Your Honor, I believe that is my position and it also was the clear statement by the Devereux court. But here we have, and let me give you a hypothetical that's not this case. Let's assume we get to trial and Detective Krauss takes the stand and says, yes, I made up all this evidence. I did it because I thought he was guilty and I was afraid there wasn't enough evidence to bring charges in the absence of me fabricating some. I know that didn't happen here. Your position is that that case does not go to the jury because she did not believe he was innocent? If there was no other evidence to suggest that there was knowledge of innocence, then yeah, it shouldn't go to the jury under the Devereux standard. It does not rise to a constitutional violation. Let me play out my thing because I find this position astonishing. The detective takes the stand and says, I heard and I believe this guy was a molester because I just looked at him and he looked like one, but I didn't have any evidence. So I fabricated all the evidence that was used at trial. He was prosecuted and convicted and it later turned out he was innocent. But I am not subject to liability because I truly believed he was guilty? That's what you're telling me. So I want to make sure that's your position. Okay. That's a little different hypothetical. Well, no, but tell me the answer to the hypothetical. Maybe I can decide later if it extends back to your position. Okay. Under that hypothetical, is there an actionable 1983 violation? There would have to be some evidence to support guilt. I think that you have to. You can't just say, I'm going to make up everything. You said it's the detective's belief. She has to believe that he's innocent in order for there to be a cause of action. If I said subjective only, then I misspoke because it is objective. Okay. Fair enough. So let me change my hypothetical slightly. One witness comes forward and says, this guy's a child molester. And the detective says, I believe that witness, but that's not enough to go to trial. It's just not very, very good. So I'll make up a whole bunch of stuff to make sure he gets convicted. She truly believes, and there is at least some evidence of his guilt. And she takes him to trial and he's convicted. And no 1983 violation, even though she admits fabricating the rest of the evidence? I think what you're missing, Your Honor, in that hypothetical is subjective belief isn't enough. I'm not taking your view that subjective belief isn't enough. My question is, even if she had objective reason to believe that this defendant was guilty, you're telling me the Constitution does not prohibit her from fabricating evidence. That's your position. I am telling you that objectively, regardless what the detective thinks. Now, if there's objective reason to think that he committed these crimes, you're telling me the police are then free to hook up the rest of the case to make sure he's either convicted or enters a plea. That's your position. Okay. That is my position and that is what the Devereux Court said, Your Honor. Let me just ask you about this. I mean, when I read Devereux, it said, we're persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. That's our statement of law in Devereux. That is the first part. And then we go on and say, here's how you can prove it in this case where there's no direct evidence of fabrication, there's just aggressive interviewing. So, Costanich said that was the approach that you use for a circumstantial evidence case. Why would that be applicable in a case where there's direct evidence of  This was our statement of law, the constitutional right not to be prosecuted on the basis of false evidence that was deliberately fabricated by the government. That's the constitutional right, the first prong of a qualified immunity. And the second issue, clearly, would a reasonable officer have known it? And we thought, yeah, that's pretty obvious. A reasonable officer would have known that. So I don't see how that helps. Well, then the court went on to explain that at a minimum, in order to prove a constitutional violation of that right. In a case where there's no direct evidence, as we said in Costanich and explained, and in Devereux there was no direct evidence, correct? There was just aggressive questioning of these child witnesses. Yes, that is true. That was the allegation in Devereux. And you agree there's direct evidence of fabrication in this case? We don't concede that, Your Honor. Well, you don't concede that she did it, but surely you must concede that when a statement is presented from an alleged victim that says the victim said A, B, and C, and the victim then takes the stand and said, no, I didn't, I never said those things, that's direct evidence. How persuasive it is, given ages and time, is a different issue. But surely that's direct evidence, is it not? In this case, the trial court, I think correctly, analyzed what did the police officer know at the time of this investigation. No, I'm not asking what she knew. I'm asking whether there was direct evidence of fabrication in this case. Based on the testimony of two of the three child victims, they allege 30 years later. No, I understand. Weight of the evidence is a separate issue. There was direct evidence of fabrication, was there not? Yes. So then, given Judge Acuda's question, don't we go back to Costanich? Not Devereaux. There's no direct evidence of fabrication in Devereaux. We're looking at aggressive questioning, and we say, gee, you've got to show more than just aggressive questioning. But do you have to show more than just direct evidence of fabrication to get to a jury? No, it got to the jury. In this case, but the judge granted a JMOL. What he said, the fact was I shouldn't have sent it to the jury. Right. So that's my question. What if you have direct evidence of fabrication and put aside the two-page, seven-page statement that may or may not be direct evidence of fabrication, but you have two people who take the stand who say, a detective produced a report that said I said this, I never said it. And it didn't happen. And it didn't happen. Isn't that, could you have more direct evidence of fabrication than that? Well, I think this detective had yet another victim. I mean, we're talking about two of the three victims. A third victim has never recanted, testified or filed. And that's why I asked the question. So let's assume she said, well, I think he did it against Matthew Hansen, I guess, right, the later victim. And your opponent says, no, there's evidence of fabrication on that, too. But let's assume she truly believes that he did all this stuff. But there's direct evidence that she fabricated much of the case. Don't you get to the jury under those circumstances? You can argue causation and intervening cause and everything else, but surely that states a constitutional violation, doesn't it? If the objective evidence shows that there was no objective basis to believe that. No, that's, see, you're saying you don't get to the jury under my hypothetical. Yes, I am, because there are two elements. There's the element of deliberate fabrication, proof of that. In addition, and both parties proposed this instruction, Your Honor. I don't care who proposed what instruction. I'm trying to figure out what the law is. Okay, well, the law is, in our eyes, that there is an element you have to prove deliberate fabrication. That is not the be all end all. If you prove that, you don't win. You have to prove the next element of knowledge of innocence. Objectively or subjectively. We do have some case law suggesting that when we're looking at essentially the sufficiency of evidence to have supported the jury's verdict, which is what we're looking at here, that the instructions pass out of the picture. And if they were wrong, we don't have to just look at what the instructions said. And I have the same reading, I guess, of Kostanich where, you know, we said that Kostanich in that case had produced evidence supporting the claim of deliberate misquoting and misrepresenting the statements of witnesses, and that was sufficient to win. We reversed a holding very similar to the one in this case. So regardless of the instructions, don't we get there simply with the fabrication evidence itself? I say no. Not only because of Devereux, but also because even the plaintiff in this case agreed. Well, I understand that. That's why I'm saying that our job isn't to worry about what the plaintiff agreed to or what the instructions were. Don't we have to look at the evidence at the trial against the correct legal standard, regardless of the instructions? To JMOL. Yes. The judge said there wasn't enough evidence to go to the jury. Forget how the jury was instructed for a moment. Don't we have to determine whether there was enough evidence to go to the jury? I do think you have to determine the amount of evidence was sufficient to go to the jury. Right. But part of that. There may be error with the instructions and you have arguments about that, but we don't look at the instructions to figure out whether there was sufficient evidence to go to the jury, do we? I would agree. You have to analyze whether the jury had sufficient evidence under the applicable law. Right, right. Yes. So let's say that, assume for the moment that this sort of due process claim, there is not an element of showing that the officer thought or should have known that the defendant was guilty. Let's say that this innocence prong of Devereaux is not an element. Then was the district court wrong in its JMOL? So if I understand your case, it hinges on the question of whether the innocence prong is an element of the case, is an element of the deliberate fabrication due process violation. With all respect, Your Honor, I think that would require me to speculate how the judge would have analyzed this. If the innocence prong is out, there is no, under Costanich and the way we've described the rule of constitutional law of deliberate fabrication, there's no requirement of showing that the police officer knew that the defendant was innocent. That innocent prong is not part of our law. Let's just assume this for a moment. Does that mean you lose? Does your case hinge on this innocent element being part of the test? I think it would have changed our approach on appeal. I mean, in this case, we were seeking affirmance of the judge's ruling, which was based on the objective evidence of knowledge of innocence. So Judge Acuda says, assume he was wrong in saying that. Is there any other basis on which you can defend the JMOL? Or must we reverse? If that were the case, we would have put a lot more emphasis on that. Well, but it doesn't matter what you would have done. Well, I mean, you're asking me to speculate. No, I'm asking you. What is your argument that, in fact, the district court was correct and that the jury did not have sufficient evidence to find in favor of the plaintiff, if the innocent element is out of the picture? What would your argument be? In that case, our argument would be that there was insufficient evidence of deliberate fabrication at the time. You have to remember that there was evidence, in this case, as to both of the people who are claiming fabrication that they'd said, I did tell the detective that. They said that under oath twice for Matt Spencer. So for a JMOL, we would have to say taking the evidence in the light most favorable to the non-moving parties or to the living party. To the verdict. Yes. And so would you be able to argue that even taking the evidence in the light most favorable to the verdict, that there wasn't enough there? We would attempt that argument, I think. Attempt that. Okay, thank you. Judge Settle didn't rule on that basis, though, right? That's correct. And we can look at that ourselves and determine whether there was sufficient evidence to go to the jury. Certainly you have that authority. Okay. Let us hear from Mr. Bogdanovich. Thank you, Your Honor. Thank you. May it please the Court. My name is Guy Bogdanovich, and I represent Sharon Krause in this matter who is present today. I want to address the pointed questions about the state of the law. Devereaux has been and continues to this day to be the seminal case that is cited in this circuit for the cause of action known as deliberate fabrication of evidence. And to answer the Court's questions, Kostanich, in our opinion, simply didn't address the issues we were wrestling with in this case about the second element which plaintiffs proposed a jury instruction on and we proposed a jury instruction on. That takes me back to my original question. Let's even assume that the instructions were correct. There are two of the alleged victims who testified these things did not happen and the statements attributed to us by the investigating officer are false. Why isn't that sufficient for the jury to find that not only deliberate fabrication but also that your client should have known that there was no ground to believe that he was guilty? Well, I think that your last statement there, with all due respect, Your Honor, kind of pulls the knowledge of innocence element back into it. But to address it. Right. That's why I did that on purpose. I said. You're assuming there is a knowledge of elements. Right. Why isn't the evidence. Is there enough evidence here to get there? All right. My apologies. And again, I go back to because Devereaux. No, I'm asking a factual question now. I'm not asking a legal question. I'm saying assume the instructions were correct. Why isn't there enough evidence to support the jury's verdict under the instructions that were given, assuming that they were correct? It's for all of the reasons that Judge Settle relied upon in granting the judgment, notwithstanding the verdict. But I don't understand that. I'm giving you Devereaux now. Let's assume Kastanis never occurred. The entire world is Devereaux. And you have to show, you have to produce sufficient evidence to go to the jury that a reasonable officer would have thought, you know, would have thought whatever you think Devereaux requires. We have here two people who say she made up our statements. When we talked to her, we told her it just didn't happen. Isn't that enough even if only the Devereaux standard applies to get to the jury? No, no, it's not. And I would cite language from the United States Supreme Court, which I think partly addresses this, and don't get me wrong, the cases are consistent in condemning police conduct along the lines of fabricating evidence. And if you're asking me, I wholeheartedly agree with that. But what the United States Supreme Court said in Hartman, which we've relied on heavily in support of our but-for causation instruction, they said it may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway. But that's the causation argument. That is a causation argument. But that's not the question I think Judge Graber asked you. She's much better at asking it than I am. Well, that's okay. I think we understand your position, so. Okay. And I would like to address the causation element because I. . . My comment on causation is that the Hartman case is critical to a situation like this where plaintiff's entire case was trying to prove the unconstitutional animus by Detective Krause, yet she wasn't the person that made the decision that by all accounts caused these damages, caused the imprisonment. That was done by the prosecutor's office and the prosecutor. . . Judge Graber has told you to finish up, but I have to ask this question. So let's assume the facts in the light most favorable to them, which is that Detective Krause made up some of the evidence, and then she brought it to a prosecutor who said, hey, that looks like enough evidence to charge to me. Are you saying that she's immunized from liability because she lied to the prosecutor too? No. I'm saying you have to look at all of the evidence that was in front of the prosecutor, which started with his direct testimony was the unsolicited disclosure by Catherine to her mother at the time. No, and I've read what the prosecutor said, but surely the prosecutor didn't say, had I known that a lot of this evidence was fabricated, it wouldn't have made a bit of a difference to me. I would have charged him anyway. He did not say that. He was not asked. No, he was not asked. So the jury was surely entitled to infer that had the prosecutor been told the truth, these charges would not have been brought. Well, and that's the problem with the causation instructions. I strongly disagree with plaintiff's counsel's representation that there was a proximate cause instruction given. There never was. And there were five questions on the verdict form, the last of which is did the fabricated evidence cause the damages or something to that effect. There was no discussion of a but for, no discussion of you have to take out whatever you found was fabricated. And keep in mind, there was very direct evidence that twice under oath, these two recanting witnesses at trial as adults, one of them had said, I reviewed those reports and I told Detective Krause everything that was said in there. Thank you, counsel. And so you have to take all that. We will take all that and all of the arguments that everyone has made. You have a bit of rebuttal time remaining. Thank you. Your Honor, just so it's clear, when we were addressing the proximate cause, I said that both merged into the moving force instruction, but I believe that the proximate cause is incorporated. Setting the instructions aside, there's case law all across the country that states that even if there would be probable cause found, that an officer still cannot fabricate evidence after that. And so I think to propose that just because an officer thinks someone is guilty, you can just go ahead and fabricate carte blanche to fabricate. There may be no damages, of course. If there are, you know, 11 eyewitnesses plus one fabricated thing, it would be impossible to demonstrate that there was either causation or damages, but there still could be a violation. Right. I agree, Your Honor. And I think the other thing that's very telling in this is Judge Settle, the only reason he entered the JMOL was that he didn't think costanage applied to this situation. He thought he misinterpreted the language going forward, which applied to the civil proceedings, the child custody proceedings. It was just that fundamental mistake that made him shift positions from when he denied the summary judgment motion. He denied the JMOL at trial on this. So it was just a misreading. But the most significant thing that Judge Settle said in the May opinion is there was vast amounts of fabricated evidence in this case. This case went to a jury. That's what we have juries for. What counsel is talking about are just credibility determinations. This jury decided that the two children, who are now grownups, were truthful, and they decided that the third victim, Matt Hanson, was not truthful. They made those credibility findings. And obviously this court doesn't want to go back and make credibility findings or try to reweigh the evidence. So this JMOL should never have been granted. The positive thing about having it granted is it's the opportunity to look at some of these standards, like the Devereux standard or maybe, you know, does there need to be a knowledge of innocence standard, or is the act of fabrication, does that indicate that one knows that someone's innocent? Why do you have to fabricate against a guilty person? Why would you be doing that? So I think those, and maybe that's in part, I try to think that Judge Settle, up to the last opinion, gave very reasoned opinions that he wanted to force this issue and get a decision on it by a higher court. So I thank you. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of all three counsel. They've been very helpful to us.
judges: Graber, Ikuta, Hurwitz